**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| N5 TECHNOLOGIES, LLC | § § | |
| v. | § § | Case No. 2:12-CV-685-MHS-RSP |
| BANK OF AMERICA, N.A. | § § | |

**MEMORANDUM ORDER**

Before the Court is Defendant Bank of America ("BoA")'s Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Dkt. No. 22, filed April 23, 2013). The complaint against Bank of America was filed on October 25, 2012. Bank of America waited nearly six months after being served with the summons before filing the instant motion to transfer on convenience grounds.[1]

**APPLICABLE LAW**

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2006). The first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In*

---

[1] The present motion to transfer venue is brought solely on convenience grounds under 28 U.S.C. § 1404 because the Eastern District of Texas is an undisputed proper venue for this lawsuit, and in any event, Bank of America never challenged venue by filing a timely motion to dismiss under Federal Rule of Civil Procedure 12(b)(3).

re Nintendo Co., Ltd., 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589 F.3d at 1200; *In re TS Tech*, 551 F.3d at 1319. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314-15.

Timely motions to transfer venue should be "should [be given] a top priority in the handling of [a case]," and "are to be decided based on 'the situation which existed when suit was instituted.'" *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003); *In re EMC Corp.*, Dkt. No. 2013-M142, 2013 WL 324154 (Fed. Cir. Jan. 29, 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 443 (1960)).

## DISCUSSION

**A.     Proper Venue**

The Western District of North Carolina and the Eastern District of Texas are proper venues.

**B.     Private Interest Factors**

### 1.     Relative Ease of Access to Sources of Proof

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation omitted).

BoA is a Delaware corporation with its principal place of business in Charlotte, North Carolina. BoA has submitted a declaration by Nicole S. Bills, SVP, Online & Mobile Channel Management, eChannels & Customer Solutions, in support of its motion. (Bills Decl., Dkt. No. 22-2.) According to Ms. Bills, "[t]he servers running the 'Text Banking' products are located in Richmond, Virginia and Richardson, Texas."[2] (*Id.* at 2) "Bank of America's 'Text Banking' products were developed and are provided under a license agreement with a third-party vendor located in California." (*Id.*). "All standard maintenance and updated (sic) of the 'Text Banking' servers takes place remotely from the third-party vendor site in California." (*Id.*) "Additionally, most documents related to Bank of America's 'Text Banking' products and/or services are also located in Charlotte, North Carolina." (*Id.*)

---

[2] BoA's motion additionally describes that the Richardson, Texas location contains servers for both BoA and the unnamed third-party vendor. (Mtn. at 3). BoA's motion also, incredibly, argues that "there likely is no relevant information on [the servers in Texas] as they are duplicative of the [servers in Virginia]," apparently asking the Court to believe that even though both are "duplicative" one is relevant while the other is not at all. (*Id.*)

N5 Technologies is a Virginia limited liability company, and its headquarters and principal place of business is in Manassas, Virginia. N5 does not identify any sources of proof located in the Eastern District of Texas.

BoA's motion appears to contradict Ms. Bills's declaration when it states that "the locus of operative facts—namely, the development and support of the Accused Products is—primarily located in Charlotte, North Carolina." (Mtn. at 3). In stark contrast, the declaration provided by Ms. Bills explicitly indicates that the original and continued development and maintenance of the "Text Banking" products is performed in California, not North Carolina. (Bills Decl. at 2). Ms. Bills's declaration also appears to contradict itself when it states that all of the development of the "Text Banking" products was performed by a third-party developer in California, while it simultaneously states that "most documents related to [BoA]'s 'Text Banking' products and/or services are also located in Charlotte, North Carolina."[3]

From the limited information provided by BoA's declaration, it appears that the bulk of BoA's sources of proof concerning its "Text Banking" products reside in California, Virginia, or Texas, as these locations contain either the developers of the "Text Banking" products or its servers.[4] While BoA undoubtedly has relevant documents in Charlotte, North Carolina—its headquarters is there—BoA provides little to no detail on what relevant documents would be

---

[3] BoA's Reply further calls into question the credibility of this section of Ms. Bills's declaration by suggesting that BoA never performed a substantive inquiry into the location of "most of the documents" when it states that "until discovery begins, there is no way for either party to determine the breakdown of relevant documents between the Bank and the vendor." (Reply at 3). The Court also strongly questions how, if the statement in BoA's Reply is true, that BoA could credibly argue, as it did to the Court in its' motion that, "the overwhelming majority of relevant witnesses and documents are in Charlotte, North Carolina . . . ." (Mot. at 3).

[4] To the extent "Text Banking" servers prove to be relevant, the servers in Richardson, Texas are relatively closer to this Court than the servers in Virginia are to the Charlotte, North Carolina court by approximately 150 miles. (*See* Resp. at 4).

found there, since BoA states that the development of the "Text Banking" product took place (and apparently continues to take place) at the California third-party.

The relative ease of access to sources of proof weighs against transfer.

### 2. Cost of Attendance for Willing Witnesses

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). While the Court must consider the convenience of both the party and non-party witnesses, it is the convenience of non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis. *Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.*, 734 F.Supp. 54, 57 (N.D.N.Y. 1990); *see also* 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3851 (3d ed. 2012). "A district court should assess the relevance and materiality of the information the witness may provide." *In re Genentech, Inc.*, 566 at 1343. However, there is no requirement that the movant identify "key witnesses," or show "that the potential witness has more than relevant and material information . . . ." *Id.* at 1343-44.

According to Ms. Bills, "Bank of America's Application Engineers, System Engineers, Platform Managers and Developers, and other personnel familiar with Bank of America's 'Text Banking' products and/or services, their design, development and operation are located in and around Charlotte, North Carolina." (*Id.* at 1-2). "All in-person meetings between Bank of America and the third-party vendor took place in Charlotte, North Carolina." (*Id.*) Ms. Bills also states that, "I am unaware of any development for the 'Text Banking products being or having been conducted in Texas or of any Bank of America employees who are likely to be witnesses that reside in Texas" (*Id.*)

While BoA's motion is correct that North Carolina is more convenient for its employees and those of N5, which is headquartered in Virginia, these witnesses are party witnesses. BoA's

motion glaringly omits the convenience of the California non-party witnesses—the developers and maintainers of the "Text Banking" products.[5] It is the convenience of these relevant non-party witnesses that the Court must weigh more heavily.

The convenience of willing witnesses weighs against transfer.

### 3. Availability of Compulsory Process to Secure the Attendance of Witnesses

There are two identified groups of third-parties: 1) the two applicants for the '297 Patent—Mr. Collin Myles and Mr. Richard Owen—who both reside in the United Kingdom and 2) the employees of the unnamed third-party California vendor.

F.R.C.P. § 45(c)(1)(B) provides, as to the place of compliance for a subpoena that "a subpoena may command a person to attend a trial hearing or deposition":

> Within the state where the person resides, is employed, or regularly transacts business in person, if the person
>
> > (i) is a party or a parties officer; or
> >
> > (ii) is commanded to attend a trial and would not incur substantial expense.

While there are no specifically identified employees of the third-party vendor in Texas, BoA has stated that the unnamed vendor has servers in Richardson, Texas. To the extent the unnamed vendor has relevant employees in Richardson or Dallas, Texas, they could be subpoenaed for trial in this Court.[6]

---

[5] BoA's Reply argues, in the context of arguing the convenience of witnesses at trial, that Charlotte, North Carolina is more convenient for its third-party vendor since the third-party vendor's customer BoA is located in Charlotte, North Carolina. (Reply at 5). The Court finds that this argument is unsupported in the record.

[6] It is not, usually, a substantial expense to travel from the Dallas / Fort-Worth metro area to Marshall, Texas. However, to the extent that it might be a "substantial expense," the comments to F.R.C.P. § 45(c)(1)(B)(ii) provide that "[w]hen travel over 100 miles could impose substantial expense on the witness, the party that served the subpoena may pay that expense and the court can condition enforcement of the subpoena on such payment."

As this Court has trial subpoena power over possible witnesses and the Western District of North Carolina is without any subpoena power over potential third-party witnesses, this factor weighs against transfer.

### 4. All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive

This factor appears to be neutral.

### C. Public Interest Factors

#### 1. Administrative Difficulties Flowing From Court Congestion

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis. A proposed transferee court's "less congested docket" and "[ability] to resolve this dispute more quickly" is a factor to be considered. *In re Hoffman-La Roche*, 587 F.3d 1333, 1336 (Fed. Cir. 2009). This factor is the "most speculative," and in situations where "several relevant factors weigh in favor of transfer and others are neutral, the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347.

BoA argues that this factor is neutral. (Mot. at 10-11). Though BoA does not provide any citation for its data[7], BoA represents that the case disposition statistics are similar between this district and the Western District of North Carolina: twelve months for this Court and fourteen months for the Western District of North Carolina. (Mot. at 11). N5 speculates, citing to data from PricewaterhouseCoopers, that the average time-to-trial for a patent case in the Western District of North Carolina is, at a minimum, double the time-to-trial for a patent case in

---

[7] BoA's motion only declaratively states "[i]n addition, the relative congestion of both venues is similar and both venues will be able to resolve this case with similar efficiency. Based on case-disposition statistics for both venues the time to disposition in patent cases is within two months of each other—twelve months for this court and fourteen for the transferee venue." (Mtn. at 10-11).

this district. The Court was only able to identify two patent cases that have gone to trial in the Western District of North Carolina since the year 2008, and both have time-to-trial dates (3.1 years and 6.7 years) significantly longer than the 2.17 years cited by N5 for this district.

The Court also notes that BoA waited nearly six months before filing this motion, adding to the delay. (Resp. at 12.) The Court finds that this factor weighs against transfer.

### 2. Local Interest in Having Localized Interests Decided at Home

This factor considers the interest of the locality of the chosen venue in having the case resolved there. *Volkswagen I*, 371 F.3d at 205-06. This consideration is based on the principle that "[j]ury duty is a burden that ought not to be imposed upon the people of a community [that] has no relation to the litigation."

BoA argues that "North Carolina has a particularized interest in this dispute" since Charlotte, North Carolina is BoA's principal place of business and because the "design, testing, and support of the Accused Products primarily occurred there." (Mot. at 11). While it is true that Charlotte, North Carolina is BoA's principal place of business, Ms. Bells's declaration contradicts BoA's motion and indicates that the development and support of the "Text Banking" products occurs in California. BoA argues that this district has no specific interest in this litigation.

The Court finds that this factor weighs in favor of transfer.

### 3-4. Familiarity of the Forum With the Law that Will Govern the Case and Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law

These factors are neutral.

### CONCLUSION

The Court finds that Movants have not met their burden and have not established that the Western District of North Carolina is a clearly more convenient forum than the Eastern District

- 9 -

of Texas.  Accordingly, Defendant BoA's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Dkt. No. 22) is **DENIED**.

**SIGNED this 10th day of February, 2014.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE